# Pruhs & Donovan, S.C.

Martin J. Pruhs  
Christopher D. Donovan

757 North Broadway – 4th Floor  
Milwaukee, Wisconsin 53202  
Tel: (414) 221-1950  
Fax: (414) 221-1959

3 February 2020

Hon. Lynn Adelman  
United States District Court  
Eastern District of Wisconsin  
517 E. Wisconsin Ave.  
Milwaukee, WI 53202

        Re:    United States v. Tedmund Blankschein  
                 Eastern District of Wisconsin Case No. 19-CR-143

Your Honor,

I write to inform you that I will be asking the Court to impose a sentence of probation for Mr. Blankschein. This sentence is appropriate for the following reasons, which will be more fully articulated at his sentencing hearing:

1. He has accepted responsibility by pleading guilty to an information, thereby obviating the need for the government to secure an indictment. He is very remorseful for his participation in the charged conduct. He regrets the impact this crime had on the victims, the government, and also the impact it has on his friends and family. He knew better than to do something like this and was raised better than to do something like this.
2. He has no prior criminal record. *See* PSR at ¶¶ 34-41.
3. He played a key, yet replaceable role in Albert Golant's fraudulent luxury vehicle buying scheme. He was first lured in as many victims and other people were into Golant's orbit: first as a straw buyer of vehicles for him, then as a recruiter for other buyers as Golant's scheme grew, and finally as Golant's "partner" in two of the business entities involved. "Partner" is included in quotes for good reason- while Mr. Blankschein's name was listed with the Wisconsin DFI as owner and he was signatory on bank accounts and engaged in several transactions for the businesses, Golant in fact "controlled the day-to-day operations" of the businesses and "directed Blankschein regarding all business decisions." *See* Attachment A to plea agreement, page 2, second paragraph. Hence, Mr. Blankschein played a key role in the fraud scheme and for that he is responsible, pled guilty and will face the consequences at sentencing (including the consequence of being a felon for the rest of his life which will impair future employment and ability to hunt with firearms). But it is clear he played a minor role in Golant's scheme as the government expressly recognizes, *see* plea agreement at ¶ 17, and no one disputes that Golant was the mastermind of the scheme and the one who by far

benefited the most from it (Mr. Blankschein's compensation paled in comparison to Mr. Golant- literally the difference between tens of millions for Golant and tens of thousands for Mr. Blankschein). If Mr. Blankschein had not agreed to serve as Golant's purported "partner," Golant surely would have found someone else that would have.
4. He has a good family and friend support system and had a good upbringing, which bodes well for him should he be granted supervision rather than prison. *See* PSR at ¶¶ 42-49; *see also* letter in support from Andy and Bridget Krause.
5. He has no ongoing drug or alcohol issues that have impeded his pretrial supervision, nor any that would impede future community supervision. *See* PSR at ¶¶ 59-64. He has had no problems while on bond pending sentencing.
6. He has always worked at stable and productive jobs that have enabled him to support himself (he has no children). *See* PSR at ¶¶ 71-83.
7. His guidelines are overstated for his actual role in the offense due to "relevant conduct." That is, while the parties agree that the total tax loss amount to the government due to Golant's scheme is roughly $5.5 million (*see* plea agreement at ¶ 15 (relevant conduct guideline loss amount), ¶ 26 (restitution loss amount), and Attachment A (loss table)), per the government's own calculations, roughly only 10% of that amount was attributable to Mr. Blankschein's tax forms, whereas 90% of it was attributable to Mr. Golant's. *See* Attached Appendix A produced by the government. And this is separate and apart from any critique that the guideline's tax loss table at U.S.S.G. § 2T4.1 is a fair measure of what sentences should be tied to what tax loss amounts in the first place. As this Court is well aware, it is free to disagree with a guideline range either categorically or in a particular case. *See United States v. Corner*, 598 F.3d 411, 416 (7th Cir. 2010). Ultimately, this Court should give the guidelines little to no weight based on both the specific facts of this case and upon skepticism that the guidelines reflect appropriate sentences in tax loss cases in general.
8. While not detailed in the PSR, he has been involved with many community service events over the years, including food drives, volunteering at the VA, organizing sporting events including his church softball team, adult hockey clinics and golf outings, and other church events and activities.
9. Sending someone to prison is very expensive, costing taxpayers over $36,000 per year, versus less than $5,000 per year for supervision. *See* PSR at ¶ 96. Hence, with no compelling need for specific deterrence, punishment beyond probation, rehabilitation, or incapacitation for protection of the public, prison is not called for in this case.

Sincerely,

/s/ Chris Donovan

CC: AUSA Laura Kwaterski via ECF